UNITED STATES' DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| AZUBUKO - <br>    Plaintiff <br><br> vs. <br><br> EASTERN BANK INCORPORATED - <br>    Defendant | CIVIL ACTION NO. <br> 05-0031-SLR |

**PLAINTIFF'S EMERGENCY MOTION FOR THE DEFENDANT TO RETURN THE CAR**

These would be the bases for the head:

01)     The Plaintiff sent by certified mail on March 14th, 2005 the 'Plaintiff's Motion for Court's Issuance of Specific Injunction Against the Defendant's Re-possession of the Car' and on March 15th about 8.30 A.M. the Defendant towed the car from the parking lot of the Boston's Public School while the Plaintiff was at work.

02)     The Plaintiff had interest in the car just like the Plaintiff thus the Plaintiff had made [hitherto]   The Plaintiff did not refuse to effect payment. The Plaintiff's contention had been that central to erroneous credit reporting, the interest rate was anomalous and necessitated modification. The Plaintiff in the past had applied for re-financing, the Defendant denied it, because it deemed the Plaintiff to be a cash-cow. It was a case of **but for** doctrine and culminated into an unjust enrichment and unconscionability.

03)     The Plaintiff spoke with an employee of the Defendant, who disclosed her name only as Cheryl and eventually connected the Plaintiff to one Mr. Parrott. The Plaintiff discussed with him the *illegality* of the car's repossession. He said that the Bank was not a party to any lawsuit and said that the Plaintiff was "Whistling in the Dixie." He equally told the Plaintiff that the car would be auctioned after 21-day. More, he said

that the only way the Plaintiff would re-possess the car would be thus paying off the balance instantaneously in the amount of $17,695.74 plus cost of repossession.

04) Importantly, Mr. Parrot acknowledged the receipt of the Plaintiff's submissions. Prior to that, the Plaintiff had called and disclosed that the Plaintiff desisted payment, because of the pending legal action. The Plaintiff equally mailed by first-class 'Notification of Commencement of Proceeding on Account Number 76879752 1' [to the Defendant] Evidently, the Plaintiff did what were expected of any reasonable and prudent person to communicate to the Defendant about the pending lawsuit and to refrain from repossession of the car: sadly, but to no avail. Certainly, the Defendant had no respect for the rule of the law. The Defendant maintained that the Plaintiff signed for the contract and should continue with the Plaintiff as an Act of God and as if circumstances never effected modification of contracts. He stated: "We are not a party to any lawsuit." By and large, the Defendant knowingly re-possessed the car despite knowing that there was a pending lawsuit or the Court was examining the terms of the contract. [42 USC Section 1981]

05) Indeed, mere notification of the Defendant of the pending lawsuit if the Defendant had respect for the rule underscored the attachment of "*sub judice*." Granted that *exclusion clause* the Defendant created stated that the Plaintiff had to continue with the payments even if there were development considerably adverse to the Plaintiff's interests in the contract. The Defendant was angling for *total judicial ouster* in the contract if non-modification of the contract prevailed despite being palpably legally defective. Indeed, in the legal kingdom, nothing was absolute. Evidently, the Defendant's propensity was tantamount to *legal impossibility*. The ugly state of things had bearings on "*contra proferentem*" rule. Excerpt in that regard from[1] read thus:

> "The general approach which the courts have adopted to the interpretation of exclusion clauses is a restrictive one, under which the exclusion clause is interpreted strictly against the party seeking to rely on it. This rule is called the '*contra proferentem*' rule. The effect of the rule is that any ambiguity in the exclusion clause is resolved against the party seeking to rely on it. Although the contra *proferentem* rule is applicable to any ambiguous term in a contract, it has been applied particularly stringently to exclusion clauses. The '*proferens*' is simply the person seeking to rely on the exclusion clause has 'imposed' it on the other party (*Scottish Special Housing Association v. Wimpey Contruction UK Ltd* 1986 SLT 173)."

---

[1] McKendrick, Ewan, "Contract Law," Second Edition, pg. 170.

06)   For the sake of *Equal Protection* and *Due Process Clauses*, the Defendant's action amounted to CONTEMPT OF COURT and the Court should act accordingly irrespective of whose horse was gored. Succinctly, the Court should not allow that to prevail. If it prevailed, it would be tantamount to "state-action" private deprivation of Equal Protection and Due Process Clauses. Reiteratively, the Plaintiff was not looking for a free ride; the Plaintiff contended that the interest rate was unconscionably too high owing to constitutionally defective assembled credit reports and should be re-financed or re-examined expeditiously. With candor in communications, it was a mountainous burden to the Plaintiff and others. Naturally, the Defendant being the benefactor was least interested in that! Truly, "no snake gets fatter without eating another snake." "The Defendant aimed at living in the sky and on the earth." [Proverbs] Consequently, the Court should act in keeping with the head and order the Defendant to return the car at where it towed it [with immediate effect]

07)   The Defendant's conduct associated with damages tortly and factly! That deserved distinctive forum. Presently, apples should be separated from the oranges to avoid prostitution of time and energy.

## CONCLUSION

The Plaintiff prayed the august Court to grant the Plaintiff prayer expeditiously, because the Plaintiff was not crying for the moon jurisprudentially. The invaluability of Equal Protection, Due Process Clauses and Rule of Law would not be over-emphasized. To the Defendant, the law had been an ass; the Plaintiff agreed on one hand, but on the other, it was not yet an assinity according to Lord Denning of United Kingdom. In that regard the Court should not allow the sunrise to meet it where the sunset left it. In essence, the Court had jurisdiction over the case and general venue was proper, therefore, the flippancy of the Defendant should not be condoned. More, "justice should be done and be seen to be done," at all material times.

Respectfully submitted from Boston – Massachusetts – on Wednesday – March 17th – 2005.

CHUKWUMA E. AZUBUKO,
Pro Se,
P. O. Box 1351,
Boston – MA 02117-1351.
Telephone: (617) 265 6291.

## CERTIFICATE OF SERVICE

The Plaintiff certified on the penalties for perjury that a true copy of the head was served upon the Defendant via the United States' first-class mail on March 17th – 2005 at One Eastern Place, Lynn, MA 01901.

CHUKWUMA E. AZUBUKO,
Pro Se.