**UNITED STATES' DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| AZUBUKO - Plaintiff<br><br>vs.<br><br>EASTERN BANK - Defendant | CIVIL ACTION NUMBER: 05-031-SLR |

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE
2005 MAR 28 PM 2: 12

**PLAINTIFF'S MOTION FOR RECONSIDERATION**

The Plaintiff did receive the Court's dismissal "Memorandum Order" dated 18th instant and postmarked self-same on Wednesday – March 23rd – 2005. These would be Plaintiff's succinct responses to the Court *ratio-decidendi* or bases of dismissal:

01) The Court attached extraordinary emphasis on the cases the Plaintiff filed and they were dismissed crassly unintelligently and discriminatorily. The judicial system was not perfect and anyone who deemed it to be perfect should tell that to the marines. The law was written, but the interpretation was palpably defective. Most Judges had forgotten that "Conscience is like a mirror, one should take a look at it and one will know whom one is." Common law provided against any reckless litigation. Glory, nobody had filed any lawsuit against the Plaintiff despite his so-called proverbial madness. The Plaintiff challenged anyone to embark on such measure individually or collectively. Therefore, the Court un/knowingly failed to winnow facts and law from kangaroo closures, Burger King's, abracadabra and discriminatory jurisprudence. Feelings should be separated from thinkings. If the Defendants were maliciously prosecuted, then, they should exercise their legal right. Construction of realities would not be considered as the law. Glory, the Plaintiff stated in the first paragraph of the Complaint that the Court had jurisdiction under Sherman and Clayton Act and the Third Circuit affirmed it - The United States' Law Week – Third Circuit Broadly Construes Clayton Act. [Volume 72 Number 32 Tuesday -- March 2 – 2004 ISSN 1522-4317]

02) The case *Azubuko v. Board of Directors, British Airways*, 520 U.S. 118 (Apr. 21, 1997) was published under Title 49 Section 41713, n 9 under the name of *Chukwu v. Board of Directors, British Airways*. Anyone who considered the jurisprudence intelligent belonged to Bedlam, in all modesty. "Man and not God will be guilty." Le the truth be tested!

03) Glory, to God in the highest, the Court did not fail to associate 42 USC Section 1981 with modification amongst others on contractual relationship.

04) On the Court's "Standard of Review," the Plaintiff thanked the Court for waiving the filing fee. The Court really got hold of the wrong end of the stick. The Plaintiff thought seriously about appealing the defective ruling, but deemed it intelligent to assist the Court to engage on jurisprudence philosophical reconstruction. The abilities to thinking critically and creatively would not be standardized. "If one proved that s/he is ignorant, then, her/his kins-wo/men should teach her/him." [Proverb] That had bearings on the case rather ruling!

05) It would be palpable distortion of the law for the Court to rule that "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." That was not true! The Plaintiff never questioned the principal loan, but central to what the Plaintiff knew and unexpected development, the cost of the loan or the interest rate was based on false and unconstitutionally assembled information – the credit reportings. Those alone were mountainous bases for relief or modification of the loan's contract. The Plaintiff was not the author of "re-financing." The Plaintiff never expected exoneration from the principal loan, but disputed the interest rate of 13% plus. That was the bone of contention! Now, the car had been re-possessed. It was re-possessed as the Plaintiff had already communicated to the Court on March 15th – 2005. On March 23rd, 2005 the Plaintiff went to the lot the car was parked to procure his personal belongings, the owner of the store demanded the key from the Plaintiff deceitfully under the color of an agreement between him and the Plaintiff. The Plaintiff gave it to him like a lamb. He was the agent of the Defendant – Eastern Bank. Presently, the Court had seen that the Plaintiff had at all times proven bases for relief, but the Court elected by accident or design to close its eye. The constitutional and statutory law existed for the Court to rule otherwise, but the Court failed to resist going with the stream.

Constitutionally, no property should be deprived without substantive and procedural due process. [Fifth Amendment]

06) The credit history was not only inaccurate, but unconstitutionally assembled – "… nor be deprived of life, liberty, or property, without due process of law;" [Fifth Amendment] Credit reporting agencies were not exonerated from "investigative reporting" and "reasonable procedures." [15 USC Section 1681 a and b and 1681a (e)] More, the same statute provided for seven years statute of limitations. That was not incorporated in the Plaintiff's credit report. If the Court could listen, it would hear the voice of the Plaintiff.

07) The Plaintiff's entry into the loan agreement had no legal bearings. The invaluablity of "inequality of bargaining power" negatived the Court's stance or propensity. Again, it was eventually known that the State of Massachusetts had a law in conformity with the law the Plaintiff thought to be exclusive to English [only] – one should not be held responsible for money paid and rejected. The Plaintiff had vague knowledge of the law, when he was studying English law. The Plaintiff did not even know that the Uniform Commercial Code was modeled upon the said law. [Chapter 106. Uniform Commercial Code; Massachusetts' General Law Chapter (M.G.L.c.) 106: Section 3-604 Discharge by Cancellation or Renunciation] [Exhibit 1]

08) The Court was superlatively right in its conclusion that all events transpired in Massachusetts. The Court was federal Court and not the Delaware's Court. The notion of '*where one is born, is where one will die or live*' approach to jurisdiction had been anachronistic and unlawful. The *legislative ouster* in that respect would be palpably unintelligent and preposterous, indeed! [Fifth Amendment; Fed. R. Civ. P. 4(e, h and k] The law never attached on quantitative basis. If it were so, restriction of one's locomotion or movement for a second would not constitute *kidnapping* and imminent danger of one's life would not constitute *assault* [as a matter of general law] The Court needed not to love the Plaintiff, but simultaneously it needed not to hurt the Plaintiff either hence the saying: "<u>love not your neighbor, but hurt not your neighbor</u>." The Court had no discretionary power on enforcement of "national contacts" test or doctrine central to the Fifth Amendment. The Defendant was a corporation in United States and even it were outside United States, the law provided for its being sued at any of the 94 federal

courts in the United States and its territories. The truth could be tested! The Plaintiff was not the author of the law. [*GMAC v. Keller*, 737 A.2d 279, 281 (Pa. Super. 1999); *Societe Nationale Industrielle Aerospatiate v. U.S. District Court for the District of Iowa*, 482 U.S. 522 (1987)). Excerpts from the Third Circuit ruling on *Base Metal Trading Ltd. v. OJSC "Novokuznetsky Aluminum Factory* (No. 01-3348) read:

"This Court reviews dismissal of a suit due to lack of personal jurisdiction de novo. *IMO Ind., Inc. v. Kiekert AG*, 155 F.3d 254, 258 (3d Cir. 1998). A District Court's denial of a request for jurisdiction discovery is reviewed for abuse of discretion. *Fraley v. Chesapeake & O.R. Co.*, 397 F.2d 1 (3d Cir. 1968).

"Rule 4 (k) (2) states: [i]f the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons ... is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state."

In order to establish that the District Court had *personal jurisdiction* over pursuant to this rule, Base Metal must demonstrate that (1) its claim arises from federal law; (2) NKAZ is beyond the jurisdictional reach of any state court of general jurisdiction and (3) NKAZ is beyond any jurisdictional reach of any state court of general jurisdiction, and (3) the federal courts' exercise of personal jurisdiction on the defendant does not offend the Constitution or other federal law. *United State v. American Bank, Ltd.*, 191 F.3d 30, 40 (1st Cir. 1999). The parties agreed that Metal's claim arises under federal law..."

"The District Court erred by failing to properly appraise the legal standard for granting jurisdictional discovery because it did not take into consideration the nature and extent of Novokuznetsky Aluminium Zavod's (NKAZ) United States contacts to determine whether Base Metal Trading, Ltd.'s (Base Metal) claim to jurisdiction was not clearly frivolous." Base Metal sought only to meet its obligations of showing personal jurisdiction by conducting limited inquiry into the contacts that could reasonably be said to flow from NKAZ's known contacts and affiliates in the United States so as to demonstrate that NKAZ is continuously and systematically conducting business in this country and thereby establishing general jurisdiction , pursuant to Fed. R. Civ. P. 4 (k) (2)."

09) By and large, the Plaintiff's association with the case was superlatively justifiable – "FEDERAL QUESTION." [28 USC Section 1331] Glory, the Court affirmed it. The Plaintiff would cement the affirmation with the scintillating or Solomon-like 11th Circuit Appeals Court verdict on *Baltin v. Alaron Trading Corporation* (No. 96-5125). The excerpt read thus:

"In a given case, a federal district court must have at least one of three types of subject matter jurisdiction: (1) jurisdiction under a specific statutory grant; (2) federal question jurisdiction pursuant to 28 USC Section 1331; or (3) diversity jurisdiction pursuant to 28 USC Section 1332(a). *See Klein v. Drexel Burnham Lambert*, 737 F.Supp. 319, 323 n. 11 (E.D.Pa. 1990). In this case, the district court did not have any of the three types of subject matter jurisdiction."

10) On the case, jurisdiction existed under 15 USC Sections 4,9,22,25,26 and37; The Sherman Antitrust Act (1890) Sections 1, 4 and 7; The Clayton Antitrust Act (1914)] The case had significantly had bearings on Civil Rights Act. [42 USC Sections 1981 and 1983] In all modesty, the Court's conclusion on "All events in issue occurred in Massachusetts" had been buried without a head-stone or grave-mark in keeping with the law of the land and not the Plaintiff's whimsicalities, though the Court disagreed – "... a reading of his allegations against the prevailing authority proves otherwise." With candor in communications, the case appeared appealable. However, they were not "... allegations ...," but legally scientific. Jurisprudence would be useless and helpless devoid of <u>precedents</u>. The Plaintiff established jurisdiction resoundingly in the Complaint, but the Court was fastidious. Perhaps, the Third Circuit Appeals Court would not be if need be.

11) The 42 USC Section 1981 applied to the case 100%. If it meant including the credit reporting agency the Defendant relied upon its unconstitutionally gather information to compute or determine the interest rate, the optimum or maximum interest of justice had to prevail. The Court should not abuse its discretion! If it did, it would be subject to review too. If need be, the credit report agency should be inter-pleaded, but the the Defendant had to supply the Plaintiff with the name and address of the agency. In the legal kingdom, whoever kissed had to marry. There existed no sacred cow in that sphere as the Court angled. The Plaintiff had the constitutional and statutory backing to modify the contract or the interest rate computation if they were based on false charges. The Plaintiff was indisputably entitled for Equal Protection and Due Process Clauses.

12) The Plaintiff knew that he was discriminated. If the Plaintiff's names were not what they were, the interest rate would be lower. When the Plaintiff told a Caucasian sister-in-law the interest rate for the matter in question, she was electrified. Sooner, she bought another car with her maiden name and she told the Plaintiff that the

interest rate was lower than what it was when she used her husband's last name. Without tergiversation, banks and insurance companies discriminated based on names or non-Caucasians hence red-lining." The truth had been out there. In essence, it was as conspicuous as an advanced pregnancy. Who shammed ignorance of it was unintelligent of her/his surrounding. Consequently, the Plaintiff needed not to establish thus: "(1) that he is a member of a racial minority; (2) an intent to discriminate by defendant; and (3) that the discrimination concerned at least one of the activities outlined in Section 1981." The Plaintiff constructively associated the high interest rate with racial discrimination. Sometimes, "the least said the better." The Court expected more from Section 81 (b) as if it were 42 USC Section 1981a. The former would be exhibited. [Exhibit 2]

13) Whether the "Plaintiff's complaint is at points rambling and ambiguous," should be a horse of another color. The Plaintiff was not a Johnbull and glory, it was not completely rambling, but "... at points ramble ..." Whether the Defendant was implicated or not, its Agent/s was/were implicated in/directly. Owing to that, the Defendant took unconscionable advantages of the Plaintiff. Therefore, the most appropriate measure would be modification of the contract. No contract in the legal kingdom was written on the stone. If it were so or in conformity with the Court's mindset, then, there would be nothing like *force majeur* or *natural frustration, variation of contract* and *void contract*. As had been known, "circumstances alter cases." Or, "the needs must when the devil drives." The principal and the agent/s were the same - there were nothing to choose between or amongst them. That was fundamental to agency law.

14) If the student loan constituted to the Plaintiff's financial burden, though beneficial to the Defendant unconscionably, the invocation of Section 1981 was straight from the shoulders. It encompassed "making" or "influencing" contracts. Exhibit 2 spoke for itself. The Court made nineteen to a dozen! At that juncture, if the Court considered that sufficient and not adequate, the Plaintiff would substitute it for 42 Section 1983. The Massachusetts' District Court just entered a no victor no vanquish ruling on the case *Azubuko v. The Educational Resource Institute* (TERI). Plaintiff did submit motion for reconsideration. Legally, the Plaintiff did not default on the loan it reflected on the first and second loans' interest rates computation. Therefore, to demand compensation was not irrational and frivolous. However, it was not a criminal offense

for the court to fill the gap. The courts needed no handholding, at all material times [hence the name "Intelligent Bystander"] Truly, Exhibit 1 spoke for itself! The Court would not afford to sweep it under the rug and if it did, that would be in violation of the law too. "The guardians are guarded." It was amongst one of the resounding edifices of democracy and the rule of law. [28 USC Sections 1346(b) (1982), 1357 and 1361]

15) The main basis for dismissal of the case was the Court's claim that "... the court's ability to exercise personal jurisdiction over defendant." The Court contradicted itself vis-à-vis what the Court said on page six's footnote – "This section grants original jurisdiction .... United States." The federal question nature of the case was indisputable. [28 USC Sections 1348 and 1349] The Third Circuit recognized personal jurisdiction and the nationwide contacts. Excerpts in that regard existed practically numberlessly thus:

"The national contacts doctrine provides that in federal question cases, the court has personal jurisdiction over defendants when there is a statutory provision for nationwide service of process and defendants have sufficient contacts with United States, not the state in which the federal court sits. Federal Trade Commission v. Jim Walter Corp., 651 F.2d 251, 256-57 (5th Cir. Unit A July 1981)."

"*But see Stafford v. Briggs*, 444 U.S. 527, 552-54, 100 S.Ct. 774, 789, 63 L.E.2d 1 (1980) (Stewart, J., dissenting) (joined by Justice Brennan) ("Due process requires only certain minimum contacts between the defendant and the sovereign that has created the court. The issue is not whether it is unfair to require a defendant to assume the burden of litigating in an inconvenient forum ...)"

"At this point, we depart from the reasoning and holding of the majority of our sister circuits. *See, e.g., Busch*, 11 F.3d at 1258 (due process satisfied when defendant resides within the United States); *Go-Video*, 855 F.2d at 1416 ("minimum contacts" with the United States satisfies due process); *Lisak*, 834 F.2d at 671 ("[T]here is no constitutional obstacle to nationwide service of process in the federal courts in federal question case"). But see Busch, 11 F.3d at 1259 (Garza, J., dissenting)..."

**"The Third Circuit held that the nationwide contacts test applies to a Clayton Act case. " [International Litigation & Arbitration Newsletter, Volume 3, Issue 3 – March 2004; *In re Automotive Refinishing Paint Antitrust Litigation BASF AG & BASF* Coating *AG* No. 02-4272, 2004 U.S. App. LEXIS 2432 (3d Cir., February 13, 2004)]**

**"General jurisdiction permits a court to exercise personal jurisdiction over a non-resident defendant when "that party can be called to answer any claim against her, regardless of whether the subject matter of the cause of action has any**

**connection to the forum."** ***Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*****, 960 F.2d 1217, 1221 (3rd Cir. 1992);** ***Empire Abrasive Equipment v. H.H. Watson, Inc.*****, 567 F.2d 554, 556 n. 1 (3d Cir. 1977). General jurisdiction can even be exercised over non-forum related activities when ...;** ***Pinker v. Roche Holidings Ltd.*****, 292 F.3d 361, 369-70 (3d Cir. 2002), that "a federal court's personal jurisdiction may be assessed on the basis of ... national contacts when the plaintiff's claim rests on a federal statute authorizing nationwide service of process."**

16) The case of *Medical Mutual of Ohio v. Denise deSoto; Jose deSoto* (Sixth Circuit Appeals Court Nos. 99-3988 and 00-3571 lent itself to the matter in question thus:

"29 USC Section 1132(e)(2). That section, the court ruled, alters the personal jurisdiction calculus established by *International Shoe Co. v. Washington*, 326 U.S. 310 (1945). Rather than asking whether the defendant has sufficient minimum contacts with the forum state for the exercise of jurisdiction to comport with traditional notions of fair play and substantial justice, as courts do when relying on a state's long-arm statute to establish territorial jurisdiction, a court should ask whether the defendant has sufficient minimum contacts with the United States. Because the deSotos had sufficient minimum contacts with the United States, the court concluded its exercise of jurisdiction over them comported with traditional notions of fair play and substantial justice."

17) The case of *Miller & Pearce, Jr. v. Asensio, Asensio & Co., Inc.* (D.S.C. No. 2:99-1861-18 lent itself to the matter in question superlatively too, thus:

"Burden of proof: The Fourth Circuit has ruled that "w[w]hen a court's personal jurisdiction is properly challenged by a Rule 12(b)(2) motion, the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). However, when the court addresses the question on the basis only of motion papers, supporting legal memoranda and the relevant allegations of complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge. In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaint, assume credibility, and draw the most favorable inferences for the existence of jurisdiction."

18) The Delaware long-arm statute had no bearings on the case. The focus should be the Defendant's CONTACTS with the United States – the sovereign. The importance of the Fifth Amendment would not be over-emphasized. Anything less than that would be tantamount to polishing the apples under the color of administration of justice. The law was not abracadabra in nature as many thought; indeed, it was scientific in nature. There existed no tall and short stories. They existed, because individuals wanted to exercise their critical and creative thinkings prostitutionally. Reiteratively, on

that sphere, the Delaware long-arm these and those were functionless – immaterial. Given the ostracization of the Delaware long-arm statute, the 14th Amendment was diametrically irrelevant too. All instances would not be standardized – *Intel Corp. v. Silicon Storage Tech., Inc.*, 20 F. Supp. 2d 690, 694 (D. Del. 1998)] "Then, is not now." [Dickens, Charles "Great Expectations"]

19) The law spoke for itself. Whether "The record is entirely silent on any connection whatsoever to Delaware" or noisy, the Plaintiff had proven that Court's failure to exercise jurisdiction over the Defendant and its Agent/s would be tantamount to "injury of law," not on the balance of probabilities, but beyond any reasonable doubt.

20) It would be judicious and advantageous too to note that the Plaintiff's direct access to the Massachusetts' District Court was no problems-free unintelligently and unconstitutionally . However, the Plaintiff could skip the restriction if the Plaintiff were to file his case/s with an Attorney. That order against the Plaintiff was discriminatory and unlawful; it roundly violated the anti-trust law. [15 USC Section 1] Therefore, the Court's jurisdiction hinged on constitutional law doctrines of **UNUDUE BURDENS**" and "**SUBSTANTIAL OBSTACLES.**" [***Planned Parenthood of Southeastern Pennsylvania v. Casey***, 505 U.S. 833 (1992)] Evidently, if the rule of law, Equal Protection and Due Process Clauses would be minimally respected, the Court's hands had been tied not central to the Plaintiff's whimsicalities, but facts and law on the case.

**CONCLUSION**

The Plaintiff had mountainously scientifically proven that the Court's dismissal of the case amounted to "Sometimes, Homer, nods." Could the Court reverse its erroneous verdict and entered judgment in favor of the Plaintiff vis-à-vis the strict liabilities nature of the case. In the alternative, the case should be set up for jury trial as the Plaintiff requested in the cover sheet and in the Complaint. On more scores than one, the Court had indisputable jurisdiction over the case constitutionally and statutorily. If the Court failed to act in keeping with the Plaintiff's prayer, the Court's conduct would culminate into "state action" discrimination and "failure to enforce the law." Without mincing words it would qualify for "injury of law." Hopefully, the Court would not go with the

stream, but move heaven and earth to ensuring that justice was not auctionable as the Defendant threatened to auction the car.

Hopefully, the Court's conscience would not be for auction and it would not be prostituted with either. Could the Equal Protection and Due Process Clauses be duly respected, at all material times and irrespective of whose horse would be gored. As already stated the Court needed not to love, but needed not to hurt the Plaintiff. Discrimination should not be the barometer for administration of justice. The Court had to intervene, to thwart the Defendant auctioning the car the Plaintiff had expended enormous amount on money on. Without circumlocution, it would be better for proactive approach to prevail than the preventive approach. The Court was under a duty to prevent the Defendant from auctioning the car, thus issuance of an emergency injunction the Plaintiff would motion for the second time, though the first one remained unanswered. The Plaintiff prayed the Court to act in keeping with the rule of law, but if the Court failed, the Plaintiff would take other expeditious legal measures. The Plaintiff would not be tired on the case central to the prodigalities of God's love and grace. The Plaintiff had acquainted the Court with ".... Set of facts in support of his claim which would entitle him to relief." If the Court claimed that they did not exist, though existed earlier, they had conspicuously existed presently. If the Court could not understand the claims, it meant an *abuse of discretion* or *intentional negligence*. The verdict was intellectually defective or improper and thunderously cried for revision. Hopefully, feelings would be distinguished from thinkings. On more scores than one, the Plaintiff had painstaking established the prima facie bases for revision of the questionable verdict.

Respectfully submitted from Boston, Massachusetts on Wednesday – March 23rd – 2005.

CHUKWUMA E. AZUBUKO,
Pro Se,
P. O. Box 1351,
Boston – MA 02117-1351.
Telephone Number: (617) 265 6291.

**CERTIFICATE OF SERVICE**

The Plaintiff certified that a true copy of the head was served upon the Defendant and the Attorney General of the United States' via United States' Postal Service certified mail numbers 7002 2030 0007 1965 9522 and 7002 2030 0007 1965 9515 on Saturday – March 26th – 2005 respectively thus:

Eastern Bank,
One Eastern Place,
Lynn – MA 01901-1508 and

The Attorney General of the United States,
Department of Justice,
950 Pennsylvania Avenue N. W. – Room 5614,
Washington, DC 20530-0001.

CHUKWUMA E. AZUBUKO,
Pro Se.